UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
SR INTERNATIONAL BUSINESS          :
INSURANCE CO. LTD.,                 :
                                    :
         Plaintiff-                 :
         Counterclaim Defendant,    :    01 Civ. 9291 (MBM)
                                    :
    -against-                       :    OPINION AND ORDER
                                    :
WORLD TRADE CENTER PROPERTIES,      :
LLC, et al.,                        :
                                    :
         Defendants-                :
         Counterclaimants.          :
-----------------------------------X
WORLD TRADE CENTER PROPERTIES,      :
LLC, et al.,                        :
                                    :
         Counterclaimants,          :
                                    :
    -against-                       :
                                    :
ALLIANZ INSURANCE COMPANY,          :
et al.,                             :
                                    :
         Additional                 :
         Counterclaim-Defendants.   :
-----------------------------------X

APPEARANCES

MARC WOLINSKY, ESQ.
GORDON M. MEAD, JR., ESQ.
MEREDITH L. TURNER, ESQ.
WILLIAM EDWARDS, ESQ.
(Attorneys for defendants-counterclaimants World Trade Center
Properties LLC, Silverstein Properties, Inc., Silverstein WTC
Mgmt. Co. LLC, 1 World Trade Center LLC, 2 World Trade Center
LLC, 4 World Trade Center LLC, and 5 World Trade Center LLC)
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
(212) 403-1000

MILTON H. PACHTER, ESQ.
MEGAN LEE, ESQ.
(Attorneys for defendant-counterclaimant the Port Authority of
New York and New Jersey)
225 Park Avenue South, 13th Floor
New York, NY 10003
(212) 435-3435

TIMOTHY G. REYNOLDS, ESQ.
(Attorney for defendant-counterclaimant the Port Authority of New
York and New Jersey)
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
(212) 735-3000

BLAIR G. CONNELLY, ESQ.
PETER ROSEN, ESQ.
(Attorneys for defendant-counterclaimant WTC Retail LLC (f/k/a
Westfield WTC LLC))
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200

HARVEY KURZWEIL, ESQ.
JOHN E. SCHREIBER, ESQ.
(Attorneys for counterclaim defendants Gulf Insurance Company and
Travelers Indemnity Company)
Dewey Ballantine LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 259-8000

ROBERT J. MORROW, ESQ.
(Attorney for counterclaim defendants Gulf Insurance Company and
Travelers Indemnity Company)
Hunton & Williams LLP
200 Park Avenue
New York, NY 10166
(212) 309-1275

MICHAEL H. BARR, ESQ.
SANDRA D. HAUSER, ESQ.
EDWARD J. REICH, ESQ.
(Attorneys for counterclaim defendant Royal Insurance Company)
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6700

CHRISTOPHER S. FINAZZO, ESQ.
ROBERT F. COSSOLINI, ESQ.
MICHAEL MERNIN, ESQ.
(Attorneys for counterclaim defendant Employers Insurance Company
of Wausau)
Budd Larner, P.C.
11 Penn Plaza, 5th Floor
New York, NY 10001
(212) 946-2798

MICHAEL B. MUKASEY, U.S.D.J.

Royal Indemnity Company, one of the insurance companies party to the ongoing litigation in this court over the amount of insurance recoverable for the destruction of the World Trade Center complex ("WTC") on September 11, 2001 ("9/11"), moves to enjoin a declaratory judgment action brought in the New York State Supreme Court ("the state action") by the Port Authority of New York and New Jersey, the Silverstein Parties,[1] and WTC Retail LLC (collectively, "the Insureds"). In the state action, the Insureds seek a declaration that the "Conceptual Framework" agreed upon to redevelop the WTC will not affect recovery rights under the property insurance policies binding Royal and six other insurers[2] (collectively, "the Insurers"). Royal, joined by Travelers, Gulf, and Wausau, asks this court to enjoin the state action pursuant to the All Writs Act, 28 U.S.C. § 1651 (2000), and exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283. Because an injunction against the state action would not fall within any of the narrow exceptions to the Anti-Injunction Act,

---

[1] The Silverstein Parties are World Trade Center Properties LLC; Silverstein Properties, Inc.; Silverstein WTC Mgmt. Co. LLC; 1 World Trade Center LLC; 2 World Trade Center LLC; 4 World Trade Center LLC; and 5 World Trade Center LLC.

[2] The defendants in the state action are Royal, Allianz Global Risks US Insurance Company (f/k/a Allianz Insurance Company), Industrial Risk Insurers, Travelers Indemnity Company, Gulf Insurance Company, Zurich American Insurance Co., and Employers Insurance Company of Wausau.

Royal's motion is denied.

I.

Familiarity with the facts giving rise to the nearly five years of coverage litigation in this court is assumed. By the time the Insureds filed the state action on June 26, 2006, this court had resolved numerous questions involving the policies and conditions binding, <u>inter alia</u>, all parties to the state action. Summary judgment motions are still pending, and six of the Insurers are engaged in an ongoing appraisal proceeding to determine the value of three categories of damage or expense set forth in the pertinent insurance policies.[3]

The subject of the state action is a "Conceptual Framework" ("the Framework") agreed upon by the Insureds on April 26, 2006, to "ensure the prompt redevelopment" of the WTC. (State Action Compl. ¶ 1) Under the Framework, the Silverstein Parties would cede control of the development of the One World Trade Center site (the Freedom Tower site) and the site now occupied by the Deutsche Bank building (Site 5) to the Port Authority, while maintaining control over the development of three sites on Church Street (Sites 2, 3, and 4). (<u>Id.</u> ¶ 2) WTC Retail, a subsidiary of the Port Authority that may be acquired

---

[3]     Wausau, whose coverage is governed by the "WilProp" form, is not involved in the appraisal proceeding.

by a Silverstein-controlled entity, would develop the retail
component. (Id.) The insurance proceeds still collectible under
the policies in effect on 9/11 would be allocated to reflect the
new division of rebuilding responsibilities. (See id. ¶ 33)
Because financing of the rebuilding plan contemplated by the
Framework relies on the availability of the remaining insurance
proceeds, the Insureds sought assurance from the WTC insurers
that the Framework would not violate anti-assignment provisions
in the applicable insurance policies. (Id. ¶ 35) Ultimately,
the Insureds were not satisfied with the responses they received
from Royal and the six other Insurers. (See id. ¶ 36)

On June 26, 2006, the Insureds filed a declaratory
judgment action against the Insurers in the Supreme Court of New
York State, New York County. The Insureds' complaint contains a
single cause of action and seeks a declaration that "the
Conceptual Framework, and the agreements and transactions
contemplated therein, will not affect adversely in any fashion
plaintiffs' recovery under the World Trade Center Property
Insurance Program and, in particular, that the Conceptual
Framework, and the agreements and transactions contemplated
therein, do not constitute an impermissible assignment that
reduces the recovery available to the Insureds." (Id., Wherefore
Clause, ¶ A) The complaint asks also that the Supreme Court
retain jurisdiction "to assure that each of the defendant[s]

complies fully with its ongoing insurance coverage obligations,"
and that the Court award plaintiffs the costs of bringing suit.
(Id. ¶¶ B, C)

The Insurers removed the state action to this court on
June 28, 2006, but it was remanded for lack of subject matter
jurisdiction on August 3, 2006.  See Port Auth. of N.Y. & N.J. v.
Allianz Ins. Co., No. 06 Civ. 5002 (MBM), 2006 WL 2175647
(S.D.N.Y. Aug. 3, 2006).


II.

The Anti-Injunction Act provides that "[a] court of the
United States may not grant an injunction to stay proceedings in
a State court except as expressly authorized by Act of Congress,
or where necessary in aid of its jurisdiction, or to protect or
effectuate its judgments."  28 U.S.C. § 2283.  "The Act is 'an
absolute prohibition against enjoining state court proceedings,
unless the injunction falls within one of three specifically
defined exceptions.'"  MLE Realty Assocs. v. Handler, 192 F.3d
259, 261 (2d Cir. 1999) (quoting Atl. Coast Line R.R. Co. v. Bhd.
of Locomotive Eng'rs, 398 U.S. 281, 286 (1970)).  "[S]ince the
statutory prohibition against such injunctions in part rests on
the fundamental constitutional independence of the States and
their courts, the exceptions should not be enlarged by loose
statutory construction."  Atl. Coast Line R.R. Co., 398 U.S. at

287; see also Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 631
(1977) (plurality opinion) ("[T]he prohibition is not to be
whittled away by judicial improvisation." (quoting Amalgamated
Clothing Workers of Am. v. Richman Bros. Co., 348 U.S. 511, 514
(1955) (internal quotation mark omitted))). "Any doubts as to
the propriety of a federal injunction against state court
proceedings should be resolved in favor of permitting the state
courts to proceed in an orderly fashion to finally determine the
controversy." Ret. Sys. of Ala. v. J.P Morgan Chase & Co., 386
F.3d 419, 425-26 (2d Cir. 2004) (quoting Atl. Coast Line R.R.
Co., 398 U.S. at 297.


III.

Royal does not allege that Congress has expressly
authorized an injunction against the state action, see generally
Vendo Co., 433 U.S. at 631-639, or that an injunction is required
to protect or effectuate a judgment by preventing the
relitigation of an issue actually decided by this court,[4] see

---

        [4]     Royal emphasizes that this court addressed "precisely
the type of claim" that the Insureds allege in the state action,
when it "issued a lengthy opinion addressing the question of
whether . . . [the] rental insurance claim [of WTC Retail's
former incarnation] 'was validly assigned to the Port Authority
as an already-accrued claim for damages.'" (Royal Mem. 7
(quoting SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props.,
LLC, 375 F. Supp. 2d 238, 245 (S.D.N.Y. 2005); Royal Reply Mem.
5-6)  With good cause, Royal never describes that opinion as a
judgment requiring an injunction to protect or effectuate.  After
all, the Framework involves a different reconfiguration of

<u>generally</u> <u>MLE Realty</u>, 192 F.3d at 261-62.  Royal relies solely

upon the exception to the Anti-Injunction Act that permits a

federal court to enjoin a state proceeding "where necessary in

aid of its jurisdiction."[5]  28 U.S.C. § 2283.

The aid-of-jurisdiction exception to the Anti-

Injunction Act implies that "some federal injunctive relief may

be necessary to prevent a state court from so interfering with a

federal court's consideration or disposition of a case as to

seriously impair the federal court's flexibility and authority to

decide that case."  <u>Atl. Coast Line R.R. Co.</u>, 398 U.S. at 295;

<u>see also</u> <u>Kline</u> v. <u>Burke Constr. Co.</u>, 260 U.S. 226, 229 (1922)

("[W]here a federal court has first acquired jurisdiction of the

_____

responsibilities and rights than was at issue earlier.  That this
court decided a previous assignment dispute does nothing more
than reveal a possibility of concurrent jurisdiction over the
present assignment dispute.  As explained in detail below, it
does not suggest that the state action risks interfering with
this court's jurisdiction.

[5]      This language is similar to language in the All Writs
Act, which grants federal courts the power to "issue all writs
necessary or appropriate in aid of their respective jurisdictions
and agreeable to the usages and principles of law."  28 U.S.C. §
1651(a).  If a court's "injunction [is] in fact necessary in aid
of its jurisdiction, then the injunction [is] authorized by the
All Writs Act, and [is] not barred by the Anti-Injunction Act."
<u>Ret. Sys. of Ala.</u>, 386 F.3d at 425.  If the injunction is "not
necessary in aid of the [court's] jurisdiction, then it exceed[s]
the [court's] authority under the All Writs Act and -- in the
absence of another applicable statutory exception -- violate[s]
the Anti-Injunction Act."  <u>Id.</u>  "[C]ases interpreting the
'necessary or appropriate in aid of their respective
jurisdictions' language of the All Writs Act are useful in
interpreting the 'necessary in aid of its jurisdiction' language
of the Anti-Injunction Act, and <u>vice</u> versa."  <u>Id.</u> at 425 n.5.

subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court.")  The exception has been construed narrowly by the Supreme Court and the Second Circuit –- limited to cases based on in rem or quasi in rem jurisdiction, and the rare occasion when the litigation itself can be treated as a res, most notably in complex multidistrict actions on the verge of settlement.  It is settled law that "a district court may not issue an injunction simply to be the first court to reach a judgment and thereby avoid issues" of preclusion and prevent duplicative litigation.  Ret. Sys. of Ala., 386 F.3d at 429 (citing Vernitron Corp. v. Benjamin, 440, F.2d 105, 108 (2d Cir. 1971); see also Atl. Coast Line R.R. Co., 398 U.S. at 295 (holding that, where "state and federal courts had concurrent jurisdiction" over a dispute involving the legality of picketing by a union, "neither court was free to prevent either party from simultaneously pursuing claims in both courts").

Notwithstanding Royal's energetic effort to squeeze the WTC coverage litigation into the narrow aid-of-jurisdiction exception, "[t]he suits at issue here are in personam actions . . . disputing the interpretation of a contract" and "[t]he existence of the state court action does not in any way impair the jurisdiction of the federal court or its ability to render

justice." Standard Microsystems Corp. v. Tx. Instruments Inc.,
916 F.2d 58, 60 (2d Cir. 1990). Even accepting Royal's
contention, still speculative at this point, that the
"overlapping issues" in the state action and before this court
are "indisputable and expansive,"[6] the Anti-Injunction Act
prohibits an injunction to ensure that this court is the first to
decide those issues.

A.  In Rem and In Personam Actions

        In Kline v. Burke Construction Co., the Supreme Court
held that only parallel in rem actions, and not in personam
actions, create interference with federal jurisdiction that
allows for an injunction against a state proceeding. 260 U.S. at
229-35; see also Ret. Sys. of Ala., 386 F.3d at 426. The Kline
Court stated:

        [A] controversy is not a thing, and a controversy

--------

[6]     For example, Royal claims that (1) the Framework allows
for the building of a hotel instead of office space on the WTC
site, which will create a question of whether such a building
would constitute a "replacement" of insured property; (2) the
Framework contemplates rent concessions by the Port Authority to
the Silverstein Parties, which may limit the business
interruption recovery available to the Insureds; and (3) because
the Framework "will inexorably affect the contractual
relationship between" the Port Authority and Silverstein Parties,
modifying the Silverstein Parties' replacement obligations under
its prior leases with the Port Authority, the Framework "could
directly impact" summary judgment motions that "in part, seek to
determine whether Silverstein in entitled to recover replacement
cost dollars for costs incurred due to contractual requirements
in its lease with the Port Authority." (Royal Mem. 8)

> over a mere question of personal liability does
> not involve the possession or control of a thing,
> and an action brought to enforce such a liability
> does not tend to impair or defeat the jurisdiction
> of the court in which a prior action for the same
> cause is pending.  260 U.S. at 230.

Thus, an injunction was not available where the federal court heard a breach of contract suit and the state court heard a suit in equity upon the same contract, "the two cases present[ing] substantially the same issues."  _Id._ at 227-28, 235.  On the other hand, a federal court might enjoin a state proceeding where "property has actually been seized under judicial process before a second suit is instituted," or "where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature."  _Id._ at 231 (_quoting_ _Baltimore & Ohio R.R. Co._ v. _Wabash_, 119 F. 678, 680 (7th Cir. 1902)).  "Since _Kline_, the Supreme Court has never held that a district court may enjoin, as necessary in aid of the district court's jurisdiction, a parallel _in personam_ state action."  _Ret. Sys. of Ala._, 386 F.3d at 426.

Royal makes the fanciful argument that this court has jurisdiction over a _res_ -- "_i.e._, the insurance proceeds available to the Insureds in the WTC Coverage Litigation." (Royal Mem. 5)  Other courts in this District have both explicitly and implicitly refused to treat insurance proceeds as a _res_ for purposes of the Anti-Injunction Act.  _See, e.g._, _Md._

9

Cas. Co. v. W.R. Grace & Co., 726 F. Supp. 62, 63-64 (S.D.N.Y.)
(refusing to apply the aid-of-jurisdiction exception because a
state coverage action by an insured against its insurers was
"merely a parallel state in personam action" and, therefore, did
not impair a federal declaratory judgment action by one of the
insurers "concerning its obligations to defend and indemnify [the
insured] under comprehensive general liability insurance policies
regarding asbestos-related bodily injury and property damage
lawsuits") aff'd, 889 F.2d 1231 (2d Cir. 1989); Mass. Cas. Ins.
Co. v. Renstrom, 831 F. Supp. 1088, 1088-89 (S.D.N.Y. 1993) (suit
in small claims court over disability insurance proceeds did not
interfere with jurisdiction in a federal declaratory judgment
action over those proceeds).

        The one case that Royal cites in which the Court
considered insurance proceeds a res in any context is Sun Life
Assurance Co. of Canada v. Gruber, No. 5 Civ. 10194 (NRB), 2006
WL 1520524 (S.D.N.Y. June 1, 2006).  In that case, the Court
found that for the purpose of determining whether to dismiss a
federal action in deference to a parallel state action under
Colorado River Water Conservation District v. United States, 424
U.S. 800 (1976), insurance proceeds that had been deposited with
the Court could be considered a res.  Sun Life Assurance Co.,
2006 WL 1520524, at *3.  Royal fails to mention that the
insurance proceeds in Sun Life were in the possession of the

Court, and Royal does not claim that any WTC insurance proceeds are in this court's possession. Sun Life, contrary to supporting Royal's position, suggests that where a federal court and state court have concurrent jurisdiction over coverage actions concerning how much an insurer must pay an insured under an insurance policy, but the policy proceeds have not been deposited with either court, those actions are simply in personam actions that risk duplicative litigation and preclusion, but do not threaten the jurisdiction of either court.

Like the federal action in Kline, the WTC coverage litigation in this court is a contract dispute over personal liability. Like the state action in Kline, the Insured's suit in the New York State Supreme Court might dispose of issues that will preclude this court from ruling on those issues (See Royal Mem. 7-8; Royal Reply Mem. 3-5). The Anti-Injunction Act prohibits enjoining the state proceeding in such circumstances. Rather, "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court," and "[w]henever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of res adjudicata." Standard Microsystems Corp., 916 F.2d at 61 (quoting Vendo Co., 433 U.S. at 642 (quoting Kline, 260 U.S. at 230)).

B. Litigation as <u>Res</u>

Alternatively, Royal relies on a line of cases that permit federal courts to enjoin state proceedings when the federal litigation itself can be analogized to a <u>res</u>. The principal Second Circuit case in this line is <u>In re Baldwin-United Corp.</u>, 770 F.2d 328 (2d Cir. 1985). Recently, in <u>Retirement Systems of Alabama</u> v. <u>J.P Morgan Chase & Co.</u>, 386 F.3d 419 (2d Cir. 2004), the Circuit clarified the limited scope of <u>Baldwin-United</u>'s holding. In doing so, the Court rejected the view, espoused now by Royal, that a case's complexity, duration, and public importance permit a federal court to enjoin a state proceeding simply because the state court might decide issues within the federal court's jurisdiction before the federal court does.

Considering a federal court's power to enjoin future state proceedings under the aid-of-jurisdiction language in the All Writs Act,[7] the <u>Baldwin-United</u> Court "recognized . . . that an injunction may be appropriate even in <u>in personam</u> actions under certain limited circumstances." <u>Ret. Sys. of Ala.</u>, 386 F.3d at 426. <u>Baldwin-United</u> involved a consolidated, multidistrict, class action by some 100,000 annuity holders asserting claims under the Securities Act of 1933 and Securities

_____

[7] The Anti-Injunction Act applies only to state proceedings that have already been initiated. <u>See</u> <u>In re Baldwin-United Corp.</u>, 770 F.2d at 335.

12

Exchange Act of 1934 against 26 broker-dealers. In re Baldwin-United Corp., 770 F.2d at 331. Eighteen of the defendants reached stipulated settlements with the plaintiff class, which the District Court provisionally approved before scheduling a fairness hearing. Id. at 332. Representatives of 40 states in the National Association of Attorneys General did not think the settlements adequately compensated the plaintiffs, and the State of New York gave notice of its intent to sue for restitution on behalf of those members of the plaintiff class who were New York citizens. Id. at 332-33. The District Court enjoined the imminent New York action and other potential state actions. Id. at 333.

The Circuit affirmed the injunction, finding that "the potential for an onslaught of state actions posed more than a risk of inconvenience or duplicative litigation; rather, such a development threatened to 'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation." Id. at 337 (quoting Atl. Coast Line R.R. Co., 398 U.S. at 295). "In effect, unlike the situation in the Kline v. Burke Construction Co. line of cases, the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control." Id. As to the 18 settling defendants, the injunction was "unquestionably 'necessary or appropriate in

aid of' the federal court's jurisdiction." Id. at 338.  As to

the eight other defendants, the Court found that the injunction

was proper "[s]o long as there [was] a substantially significant

prospect that these 8 defendants [would] settle in the reasonably

near future."  Id.

Royal argues that "[c]ourts in this Circuit and others

repeatedly have recognized that the [All Writs Act and Anti-

Injunction Act], construed together, . . . give a court the

ability to determine properly the rights of the parties before

it," and that "[i]nvoking this authority is particularly

appropriate where the matter is one of public importance

involving years of litigation."  (Royal Reply Mem. 6-7)  However,

as explained in Retirement Systems of Alabama, "it was crucial to

[the] analysis" in Baldwin-United "that most of the defendants

had already settled, and that there was a 'substantially

significant prospect that [the other eight defendants] will

settle in the reasonably near future.'"  Ret. Sys. of Ala., 386

F.3d at 428  (alteration in original) (quoting In re Baldwin-

United Corp., 770 F.2d at 338); cf. In re Agent Orange Prod.

Liab. Litig., 996 F.2d 1425, 1432 (2d Cir. 1993) (finding an

injunction against state proceedings permissible where the

District Court had continuing jurisdiction to ensure that a

settlement agreement was enforced according to its terms)

overruled in part on other grounds by Syngenta Crop Protection,

<u>Inc.</u> v. <u>Henson</u>, 537 U.S. 28 (2002).  In other words, whether a
federal court exercising jurisdiction over an <u>in personam</u> action
may enjoin a state proceeding despite <u>Kline</u>'s restrictions does
not depend on the case's public importance, complexity, or length
of pendency in federal court, but on the proximity of a final
resolution that a state action would not merely complicate or
impede, but actually undermine.  <u>Retirement Systems of Alabama</u>
involved a consolidated class action against WorldCom, whose
"massive restatement of its financial statements[] precipitat[ed]
the filing of numerous individual and class actions in state and
federal courts across the country," and led to "the largest
bankruptcy filing in United States history."  386 F.3d at 421-22.
Despite the nationwide import of that case, its formidable
complexity, and the setting of a trial date, the Second Circuit
held that the Anti-Injunction Act did not permit an injunction
against a state proceeding "aris[ing] from and plead[ing] the
same course of conduct" so that the federal court could be the
"<u>first</u> court to hold a trial on the merits" and avoid the effects
of collateral estoppel.  <u>Id.</u> at 423, 429.  In a passage that
bears quoting in full in order to dispel Royal's contention that
this court cannot "properly" determine the rights of the parties
before it if the state action proceeds, the Second Circuit
observed:

> There is no reason why [a] state court cannot or
> should not determine issues of fact and state law

15

relevant thereto as they come up in the state
litigation.  The subsequent effect of collateral
estoppel, far from requiring the federal court to
stay proceedings in the state court, is a result
which should be welcomed to avoid the task of
reconsidering issues which have already been
settled by another competent tribunal.  Id. at 429
(alteration in original) (quoting Vernitron Corp.,
440 F.2d at 108).

Like the WorldCom litigation, the WTC coverage

litigation is complicated, time-consuming, and sensitive.

Moreover, and regrettably, this court is aware of no fact that

suggests the parties are on the verge of settlement: in fact, the

end is nowhere in sight.  An injunction against the state action

would serve no purpose other than to preserve this court's

prerogative to rule on coverage issues before the state court

does -- a purpose that does not qualify for the aid-of-

jurisdiction exception to the Anti-Injunction Act.

Royal's attempts to limit the application of Retirement

Systems of Alabama are unavailing.  Royal states incorrectly that

the Second Circuit held only that, when settlement was not

imminent, an injunction was impermissible to prevent delay.

(Royal Reply Mem. 9)  The Court reached that question only after

deciding as an initial matter that a federal court cannot enjoin

state proceedings to allow it to resolve questions of fact and

law before the state court does.  See Ret. Sys. of Ala., 386 F.3d

at 429.  It is irrelevant that the plaintiffs in the state action

in Retirement Systems of Alabama were not parties to the federal

action.  Id. at 423.  The state action in that case arose from
and pleaded the same conduct alleged in the federal action, id.,
and thus created a potential for precluding the adjudication of
issues in federal court similar to Royal's allegations of what
will happen should I not enjoin the state action here.  Finally,
Royal claims that the "Insureds . . . do not even attempt to
explain, as the Retirement Systems Court did with respect to the
situation before it, how the [state action] could proceed without
seriously impairing the authority of this Court to determine the
issues in front of it in the WTC Coverage Litigation."  (Royal
Reply Mem. 9)  But, as explained repeatedly above, the risk that
a state court will rule on the same issues –- whether or not they
concern the same parties -- before a federal court has the chance
to do so, is not considered an impairment to the federal court's
jurisdiction.

     In Retirement Systems of Alabama, the Court rejected
analogies to cases where other Circuits had affirmed injunctions
against state proceedings even though the actions before the
district courts were in personam and not on the cusp of
settlement.  See 386 F.3d at 429-30.  Similarly, the cases from
other Circuits that Royal cites in support of its position are
plainly distinguishable from the current circumstances, and would
be of no avail even in the absence of Baldwin-United and
Retirement Systems of Alabama.  For example, Royal says that the

Fifth Circuit securities fraud case <u>Newby</u> v. <u>Enron Corp.</u>, 338
F.3d 467 (5th Cir. 2003), "is particularly instructive" because
the Court "placed particular emphasis on the fact that, like
here, the district judge had ruled on 'numerous motions and has
been heavily engaged in the considerable task of managing this
complex litigation, including issuing a comprehensive pre-trial
scheduling order.'" (Royal Reply Mem. 7-8 (<u>quoting</u> <u>Newby</u>, 338
F.3d at 469))  Yet as the Second Circuit noted in <u>Retirement</u>
<u>Systems of Alabama</u>, <u>Newby</u> involved motions in state court for
injunctive relief that "could expose the . . . defendants to
serious risk" and "duplicated relief granted by the federal court
and thus collaterally attacked the district court's ruling."
<u>Ret. Sys. of Ala.</u>, 386 F.3d at 430 (<u>quoting</u> <u>Newby</u>, 338 F.3d at
475).  The <u>Newby</u> Court pointed out that the District Court in
that case had barred the plaintiffs only from seeking injunctive
relief in state court without asking permission from the federal
court, not from proceeding in state court at all.  <u>Newby</u>, 338
F.3d at 476.  Like the situation in <u>Retirement Systems of</u>
<u>Alabama</u>, the WTC coverage litigation "does not involve
duplicative motions for injunctive relief, and does not expose
[the Insurers] to the risk of inconsistent injunctions.  It only
risks subjecting [them] to simultaneous litigation in federal and
state courts -- a familiar feature of our federal system."  <u>Ret.</u>
<u>Sys. of Ala.</u>, 386 F.3d at 430.  Moreover, Royal seeks a blanket

18

injunction preventing the Insureds from litigating the "claims asserted in [the state action] in any forum, action or case whatsoever, outside of the pending litigation" in this court. (Royal Mem. 1)  Such an injunction is plainly outside the scope of Newby.

The other non-Second Circuit cases that Royal includes in its list are equally inapposite because they involve concluded settlements, specific orders by federal courts that state proceedings could interfere with, the disposition of a res despite technical in personam status, or some combination of the above.  See In re Diet Drugs, 369 F.3d 293, 306 (3d Cir. 2004) (a district court has authority, under the aid of jurisdiction exception, to issue an injunction against claims for punitive damages in state court because the state proceedings would undermine a settlement in federal court that prohibited such claims); United States v. Alpine Land & Reservoir Co., 174 F.3d 1007, 1009-10, 1013-15 (9th Cir. 1999) (affirming an injunction in a suit over water rights, because, "although equitable actions to quiet title are technically in personam actions," water adjudications are properly considered in rem, and because the District Court had expressly retained jurisdiction over specific final decrees whose modification the parties were disputing[8]);

---

[8]     Royal makes much of the Insureds' request that the state court "[retain] jurisdiction to assure that each of the defendant[s] complies fully with its ongoing insurance coverage

19

<u>Battle</u> v. <u>Liberty Nat'l Life Ins. Co.</u>, 877 F.2d 877, 879-82 (11th

Cir. 1989) (affirming an injunction where the federal court had

entered a final judgment pursuant to a settlement agreement and

explicitly retained jurisdiction over the case); <u>United States</u> v.

<u>Dist. of Columbia</u>, 654 F.2d 802, 803-05, 809-811 & n.16 (D.C.

Cir. 1981) (affirming, under both the aid-of-jurisdiction and the

protect-or-effectuate exceptions, an injunction against

enforcement of a state order that would have impaired the

District Court's ability to enforce a prior order that endorsed a

particular site for sludge disposal); <u>Swann</u> v. <u>Charlotte-</u>

<u>Mecklenburg Bd. of Educ.</u>, 501 F.2d 383, 383-84 (4th Cir. 1974)

(affirming an injunction in a school desegregation case where

---

obligations." (State Action Compl., Wherefore Clause ¶ B)  Royal
argues that "[t]here can be no clearer proof that the Insureds
seek to interfere with the indisputable jurisdiction of this
Court over these very 'obligations.'" (Royal Reply Mem. 1)  Even
if the clause could be read to apply more broadly than to the
specific coverage questions before the state court regarding the
Framework, and I do not think it can be, I reiterate that state
court jurisdiction over the same claims and parties that a
federal court has jurisdiction over does not in itself constitute
interference with that jurisdiction.  Moreover, I have never
issued an order reserving jurisdiction over all possible coverage
questions arising out of WTC property insurance.  On the other
hand, I have stated that on a motion-by-motion basis I may decide
questions of law that go directly to the three values being
calculated in the appraisal proceeding involving six of the
Insurers.  <u>See</u> <u>SR Int'l Bus. Ins. Co., Ltd.</u> v. <u>World Trade Ctr.</u>
<u>Props., LLC</u>, No. 01 Civ. 9291 (MBM), 2006 WL 2060464, at *6
(S.D.N.Y. July 25, 2006).  Should there come a time when the
Insurers can specify a question being litigated in state court
that is directly and clearly related to the limited task of the
appraisal panel, then perhaps a narrowly tailored injunction
might prove necessary.

"the pending state suit could affect the Board's efforts to
comply with previous federal court desegregation orders").

\*          \*          \*

Because an injunction against the state action would
serve no other purpose than to prevent duplicative litigation and
the preclusive effect of state rulings, the aid-of-jursidiction
exception to the Anti-Injunction Act does not apply and Royal's
motion is denied.

SO ORDERED:

Dated:    New York, New York          Michael B. Mukasey
          August 11, 2006              U.S. District Judge