UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SR INTERNATIONAL BUSINESS INSURANCE                               :
COMPANY, LTD.,                                                    :
                                                                  :      01 Civ. 9291 (HB) and
       Plaintiff-Counterclaim Defendant,                           :           related
                                                                  :           actions
       -v-                                                        :
                                                                  :       **MEMORANDUM**
WORLD TRADE CENTER PROPERTIES LLC, et.                            :         **OPINION**
al.,                                                              :
                                                                  :
       Defendants-Counterclaimants.                               :
------------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

    Familiarity with prior opinions and the facts of this litigation is presumed.

    On February 15, 2005, Chief Judge Michael Mukasey ruled that the Appraisal Panel, when it determined the rental losses for the World Trade Center ("WTC") complex following 9/11, would determine them based on a theoretical, not actual, "period of restoration" – i.e. the theoretical time needed to "repair, rebuild, or replace the WTC complex." SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 2005 WL 827074, at *3 (S.D.N.Y. 2005).

    On October 31, 2006, I ruled that the Silverstein Parties' replacement cost coverage was limited to replacement of the WTC "as was" – i.e. "as it stood early on the morning of September 11, 2001." SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 2006 WL 3073220, at *6, *13 (S.D.N.Y. 2006). I noted in my ruling that the "length of time necessary to complete rebuilding a hypothetical WTC affects the amount of rental losses the Insureds seek to recover." Id. at *5 n.23.

    Neither Judge Mukasey, nor I, however, determined the length of that period of time. That issue, as well as all other factual disputes relating to the valuation of the Insureds' loss, will be determined by the Appraisal Panel. See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 2002 WL 1905968 (S.D.N.Y. 2002) (Martin, J.). Indeed, Judge Mukasey reiterated two years ago in his February 15, 2005 opinion that the Appraisal Panel would determine the "period of restoration" as it related to the

Silverstein Parties' rental value claim.  <u>SR Int'l</u>, 2005 WL 827074, at *1 n.2.  Judge Mukasey further noted that the "specific factors to be considered in calculating the restoration period… are to be decided by the Appraisal Panel.  <u>Id.</u> at *1 n.1.  Among those factors, Judge Mukasey noted, are "real-world circumstances."  <u>Id.</u>

Thus, Judge Mukasey held that in the context of "rental value" coverage, the "period of restoration" to replace the WTC referred to a theoretical replacement.  I held, in the context of "replacement cost" coverage, that such theoretical replacement was of an "as was" WTC, as of the morning of 9/11.  The Insurers now accordingly contend that the Silverstein Parties should be precluded from introducing evidence of "real-world circumstances" – specifically, it appears, circumstances that mandate the rebuilding of a different WTC from the one that we saw early on the morning of 9/11 – to the Appraisal Panel in the context of their "rental value" claim.[1]

It is true, as the Silverstein Parties note, that the two coverages at issue here are different.  Replacement cost coverage provides the insured with the cost of replacing the lost or damaged building; "rental value" coverage provides the insured with his lost rental income during the period of the rebuilding of the new complex.[2]

Regarding the structural nature of the WTC complex to be replaced, however, the issue is the same.  For the purposes of both policies, the hypothetical "rebuild" is of the

---

[1] As the Insureds note, the Insurers here have been aware of the potential ambiguity in Judge Mukasey's "rental value" opinion regarding "real-world circumstances" since at least July 5, 2005, and have not filed a formal motion, as they did regarding replacement cost coverage.  <u>See</u> Letter of John B. Massopust to Randall Wulff, July 5, 2005, at 1.

Additionally, the Insurers contend that the parties' agreements regarding durations of time for pre-construction and construction of the WTC core and shell determine, or preclude further consideration of, the duration of time for rebuilding the WTC in the context of rental value.  However, the parties expressly reserved determination of the "rental value" duration in their prior agreements regarding the durations for the core and shell.  <u>See</u> Letter of Peter C. Hein, January 19, 2007, at Tab 10 ¶ 4, Tab 11 ¶ 9.

[2] The "Rental Value" coverage provides that the Insurers "will pay for the actual loss of . . . Rental Value sustained by the Insured due to the necessary 'suspension' of the Insured's 'operations' during the 'period of restoration.'"  The policy defines "period of restoration" as beginning on "the date and time of direct physical loss or damage" and, absent resumption of operations at "a new permanent location," ending on "the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality."  <u>See</u> <u>SR Int'l</u>, 2005 WL 827074, at *3.

The "replacement cost" coverage typically provides that "in the event of a covered loss or damage, the [insurer] will determine the value of Covered Property at the replacement cost as of the time and place of loss… The [insurer] will not pay more on a replacement cost basis than the least of… the cost to repair, rebuild, or replace, at the same site, the lost, damaged, or destroyed property, with other property of comparable size, material, and quality."  <u>See</u> <u>SR Int'l</u>, 2006 WL 3073220, at *3.

2

WTC as it stood on the early morning of the 9/11 attacks.  Both opinions are consistent in this respect.[3]

That said, although the building to be hypothetically replaced is the WTC as it stood on 9/11, the valuation of rental income during that period of replacement after 9/11 necessarily requires the Appraisal Panel to consider events after 9/11.  The Appraisal Panel indisputably may consider "real-world circumstances" such as rental market rates or vacancy statistics for the relevant time periods after 9/11 in arriving at its valuation.  Such data will undoubtedly reflect a changed, post-9/11 commercial real estate market in New York.  The Appraisal Panel is entitled to give that evidence whatever weight it feels it deserves.  "[Although] [t]he restoration period remains theoretical… it is not computed in a vacuum."  SR Int'l, 2005 WL 827074, at *6.

Thus, to the extent that Judge Mukasey's and this Court's opinions require clarification, I hereby clarify our opinions as such:

The Appraisal Panel, in hearing evidence regarding Silverstein's "rental value" coverage, may hear evidence that relates to the hypothetical rebuilding of the WTC as it stood on the morning of 9/11.  The Appraisal Panel may also hear evidence that relates to Silverstein's hypothetical lost rental value, including evidence of post-9/11 events, during that hypothetical replacement of the WTC as it stood on the morning of 9/11.

---

[3] Judge Mukasey defined the crux of Insurers' motion thusly: "The Insurers argue that the period of restoration [*12]  is a theoretical construct, defined as the reasonable time that would be needed to repair, rebuild, or replace the WTC properties as they stood before the September 11 attacks."  SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC, 2005 WL 827074, at *3.  Judge Mukasey subsequently granted the Insurers' motion without qualification.  He summarized his holding similarly, albeit without the qualifier "as they stood before the September 11 attacks."  Id. at *9 ("The restoration period during which the Silverstein Parties can be compensated for their rental value losses is the theoretical, not the actual, time needed to repair, rebuild, or replace the WTC complex.")

Thus, a fair reading of Judge Mukasey's opinion is that he held that for purposes of calculating rental value, the "period of restoration" refers to the time needed to repair, rebuild, or replace the WTC properties as they stood on the morning of 9/11.

Additionally, Silverstein cites Judge Mukasey's reference to Anchor Toy Corp. v. American Eagle Fire Ins. Co., 155 N.Y.S.2d 600, 603 (N.Y. Sup. Ct. 1956), in support of the proposition that Judge Mukasey intended to allow Silverstein to put on evidence of "real-world circumstances" affecting the rebuilding of the WTC in the context of his rental value claim.  However, Judge Mukasey's citation of Anchor Toy is *dicta*, as Judge Mukasey considered Anchor Toy in the context of Silverstein's contention that the "period of restoration" should be the actual, rather than hypothetical, rebuilding time.  Even were it not *dicta*, Anchor Toy fits within this Court's reasoning that although the replacement building need not be "identical," it should be "comparable."  See SR Int'l, 2006 WL 3073220, at *11-13 (discussing "comparable size, material, and quality" clause in replacement cost coverage); compare SR Int'l, 2005 WL 827074, at *5-6 (discussing "reasonable speed" and "similar quality" clause in rental value coverage, and finding that it unambiguously supported Insurers' position).

However, insofar as evidence relates to the rebuilding of a structurally different WTC from the one that stood on 9/11 – e.g., a WTC that incorporates a) new floors, or an increase in the height of its floors, b) the addition of blast walls, c) the use of embassy glass, d) changes in design, or e) rebuilding outside the original footprints, see SR Int'l, 2006 WL 3073220, at *5 – the Appraisal Panel may not hear it during its "rental value" proceedings.[4]

**SO ORDERED.**
February 16, 2007
New York, New York

U.S.D.J.

---

[4] As I noted in my October 31, 2006 opinion, insofar as it is relevant to the "period of restoration," the Appraisal Panel may continue to hear evidence relating to the use of different, but comparable, materials involved in the replacement of the WTC, such as the use of vinyl instead of asbestos, or different steel to rebuild similarly-sized beams. See SR Int'l, 2006 WL 3073220, at *12 n.42, *13 n.44.